WRIGHT *versus* MULLENS.

1. The complaint of a party, in a proceeding for forcible entry ahd detainer, must shew, that the plaintiff was in possession.
2. The word " occupancy," does not, necessarily, embrace possession.

In this case, Mullens instituted, before a justice of the peace for Lawrence county, a complaint, alleging, that Wright was unlawfully detaining from him a tract of land, described in the complaint. A verdict and judgment being rendered, before the justice, in favor of the plaintiff, the cause was removed by *certiorari,* into the Circuit court—and affirmed.

On a writ of error to this Court, it was assigned, that the complaint contained no averment, of the possession of Mullens, in the land, which was the subject of the proceeding.

*Hopkins,* for the plaintiff—*Ormond, contra.*

TAYLOR, J.—The assignment of error, relied upon in this case, is in these words : " The court erred in affirming the judgment of the justice, because the complaint of the defendant in error, does not shew that the defendant ever had been in possession of the land occupied by the plaintiff in error, and from which the writ of unlawful detainer was intended to remove him."

It is admitted by the counsel for the defendant, that it should appear in some part of the proceedings, that the party pursuing this remedy, had been in possession ; but it is contended, that by a liberal construction of the complaint, it does show that fact, and

that such a construction is always given in cases of this kind.

It is certainly true, that this mode of redress, is favored by our courts ; and if the proceedings before the justice contain any thing equivalent to an allegation of possession in the defendant in error, it will be deemed sufficient to sustain the judgment.

The part of the complaint relied upon, is in the following words : "The said James Mullens did, on the 7th January 1830, purchese the following tract of land, lying in the said county, to-wit—the east half of the north west quarter of section number eight, township number five, and range number nine, west, under the act of Assembly, passed twentieth January, eighteen hundred and twenty-nine, and entitled an act to enable the State of Alabama to sell and dispose of certain lands therein mentioned, *as an occupant.*"

It is insisted that his purchase " as an occupant," necessarily conveys the idea of a previous possession.

The provisions in the act referred to, giving preferences to occupants, are to be found in the ninth and tenth sections.

The ninth declares, " that each and every free person, or the legal representative of such, who, on or before the first day of June, eighteen hundred and twenty-eight, cultivated any of said lands, or now hold possession by purchase under such, and now actually residing upon, cultivating, or occupying, any of said lands, shall be entitled to a preference in becoming a purchaser of the lands he or she resides upon, occupies or cultivates, not exceeding one half section, which may be taken in half quarter sections, or

in any other legal sub-division, so as to include his improvements, as far as practicable."

"Sec. 10. That when two or more persons, entitled to pre-emption, according to the provisions of this act, reside upon, cultivate, or occupy, the same half quarter section, or the same part of a fractional section of land, according to the legal sub-division thereof, the same shall be divided equally between the two having the oldest occupancies," &c.

Any person having title to a tract of land, who lives upon and cultivates a part of it, is considered as in possession of the whole, and if another should enter upon any part of the tract, he would be viewed as a trespasser, and if he remained on it, as dispossessing or ousting the owner. But a man who settles upon the public domain, although that domain, by actual survey, is laid off into distinct tracts, either large or small, he is considered in possession of no more than he actually cultivates. This intrusive possessor, could not be so far favored by the law, as to be viewed as occupying more than he had actually subdued. Therefore, if one or more persons should afterwards settle upon other parts of the same tract, their possession would not conflict with his.

No title was vested in the occupants, by the act of 1828, until the right of pre-emption was, in some way, recognised by the officers of the state; probably not until the occupant actually purchased the land; and until such recognition, the possession of each was limited to the land actually subdued by him.

The complaint states, that the plaintiff in error was in possession of the land described in it, at the time the purchase was made. May not the defendant have been the last of three settlers on the same

half quarter, and, under the law, not entitled to any part of it by pre-emption, or may he not have settled on and subdued a part of it after the first of June, 1828, and before the defendant acquired any title? It is true, the complaint alleges that he was possessed of the half quarter section; but as this was the act of the defendant in error, the plaintiff cannot be prejudiced by it; and under such a description, there is no doubt proof might have been made of possession of any part of the land, no matter how small. It might even have happened, that the commissioners allotted to the defendant, land to which strictly he had no right. The word "occupant" does not necessarily embrace possession of the spot held by the plaintiff, and it is believed that something *clearly* showing a previous possession in the person making the complaint must appear in the proceedings.

In the case of *Payne* vs. *Martin*,[a] the complaint states "that Martin *held* the premises for a term of years, and that Payne was tenant thereof for the year 1823, and continued to hold over. There, it was determined that the allegation of possession was sufficient after verdict, because, although the complaint was somewhat indefinite, it admitted of "no other interpretation, than a vague or imperfect description of a tenancy held by Martin for a term of years, by him let to Payne for one year, and by him held over."

In this case, however, "other interpretations" may be given to the complaint, and such as would not comply with the requisitions of the law.

If, after the first of June, 1828, and before any title was vested in the defendant in error, the plaintiff took possession of a part of the land; or if he was the last of three settlers on it, but occupied a differ-

[a] 1 Stewart 408.

ent part from that cultivated by the defendant; or if the commissioners, by mistake, or by being overreached, determined that the defendant was entitled to the preemption right, in either instance the defendant never would have had possession of the spot occupied by the plaintiff in error.

It may be said that the most probable inference is, that there had been a previous possession by the occupant. True; but I do not find any case in which this is adjudged to be sufficient.

It is always with great reluctance, that I agree to reverse a case, where justice is evidently on the side of the judgment below; but it is much more important, that rules of law should be preserved, than that justice, in each particular instance, be meted out.

The court is of opinion that the judgment should be reversed.